PATRICK and others *vs.* THE EXCELSIOR LIFE
INSURANCE COMPANY.

The suicide of a person whose life is insured for the benefit of another is no
defence to an action upon the policy, where there is no stipulation to that
effect in the policy.

Although suicide has been called a felony, it will not avoid a policy containing
a condition that the same shall be void if the assured shall die " in the known
violation of the law of any state."

An applicant for life insurance was asked the question whether he had any
"*serious* disease?" On the trial, the court was requested to charge that if
the insured ever had *any* disease, prior to the application, and did not dis-
close it, the plaintiff could not recover. *Held*, that the request was too
broad; and that the court properly refused to charge as asked.

APPEAL, by the defendant, from a judgment en-
tered upon a verdict, and from an order denying
a motion, made upon the judge's minutes, for a new
trial.

*E. F. Shepard*, for the appellant.

*Henry Smith* and *John R. Putnam*, for the respon-
dents.

*By the Court*, LEARNED, P. J. This is an action on
a policy of insurance on the life of Ralph T. Darrow,
for the sole benefit of his wife, Mary E. Darrow. The
policy did not contain any clause making it void in case
of the suicide of the insured.

The defences relied on were, the suicide of the in-
sured, and his breach of the warranties contained in his
application.

The case of *Fitch* v. *American Popular Life Ins. Co.*,
in the Court of Appeals, (11 *Albany Law Jour.*, 91 ; 59
*N. Y.*, 557,) has settled the doctrine that in the case of a
policy for the benefit of the wife, the suicide of the in-
sured is not a defence, where there is no stipulation to
that effect in the policy.

This doctrine makes the question of sanity, or insanity, immaterial in this case, and disposes of most of the points raised by the defendants. For I do not think that the expression, "in the known violation of the law of any state," can be construed to include suicide; although suicide has been called a felony. (4 *Bl. Com.*, 189.)

In the case above cited, the application for insurance declared in very strong language that all the statements were warranties and the basis of the contract. Yet the court held that, looking at all the papers, and considering the character of the minute inquiries made of the applicant and other circumstances, the true construction was that the policy was void, only in case of intentional and fraudulent misrepresentation or suppression.

In this present case, however, the court charged favorably to the defendants on this point; holding that the representations amounted to a warranty.

The court declined to charge that if Darrow ever had any disease, prior to the application, and did not disclose it, the plaintiff could not recover. This request was too broad. The language of the question put to the applicant was whether he had any "*serious*" disease. Besides, the only evidence on the trial as to any disease had reference to rheumatism and the disease of the legs. And on these points the court had already charged as the defendants requested.

The court was asked to charge that if Darrow had not always been sober and temperate, the plaintiff could not recover; and declined to modify what had been already said on that point. The court had already charged that false representations made, in answer to the inquiries, avoided the policy. And he had called the attention of the jury to the representation that the deceased was a sober and temperate man, and he had left it to the jury to determine what the parties meant in that representation, in view of the ordinary transac-

tions, purposes and business of mankind. He was not requested by the defendant to declare, as matter of law, the meaning of the words sober and temperate. And perhaps their meaning is best left to the jury's knowledge of language. At any rate, there was no refusal by the court to explain the meaning. There was some evidence that Darrow had been seen intoxicated two or three times within four or five years previous to the application. And the court left it to the jury to say, on the evidence, whether his habits were sober and temperate.

There was a motion for a new trial on the minutes. On what grounds does not appear. Probably none were ever presented to the court below. There could be no question as to the amount to which, if to anything, the plaintiff was entitled.

If it be claimed that the verdict is against the weight of evidence, it is to be noticed that the medical examiner of the company stated in his report to them, at the time of the application, that Darrow had had slight attacks of sciatica. And in his testimony at the trial he stated that Darrow so told him. Dr. Hamilton testified that Darrow did not use a crutch before the early part of 1870. (The policy was taken out in February 1870.) Darrow's partner testified that he did not walk lame prior to 1870. Mr. Bean testified that the first he knew of Darrow's lameness was in 1871. Dr. Babcock saw Darrow with a crutch or cane two years before he died,—(died April 28, 1872,)—and had the impression that Darrow had *locomotor ataxia;* but did not examine him. Mr. Hill's testimony refers to a short time before Darrow's death.

From the examination of the evidence we cannot say that the verdict was contrary thereto. The physician who merely saw Darrow walking in the street only stated an impression as to the existence of paralysis.

And even the time when he saw Darrow is not fixed with certainty.

The judgment and order appealed from should be affirmed with costs.(*a*)

Judgment accordingly.

[THIRD DEPARTMENT, GENERAL TERM at Albany, January 5, 1875. *Learned, Boardman* and *James*, Justices.]

(*a*) *S. C.*, reported briefly, 4 *Hun*, 263.