## MARY J. DARROW, RESPONDENT, *v.* FAMILY FUND SOCIETY, APPELLANT. *

*Provision avoiding an insurance policy in case the assured shall die in the violation of, or the attempt to violate, any criminal law — the assured does not violate such a provision by committing suicide — Penal Code, secs.* 173, 178.

This action is brought by the plaintiff upon a policy of insurance or bond issued by the defendant, a corporation organized under chapter 175 of 1883, by which it agreed to pay to the plaintiff, the wife of one James H. Darrow, "within sixty days after the receipt of satisfactory evidence to the society of the death of the within named member, during the continuance of this bond in full force, * * * five thousand dollars from the death fund of this society at the time of said death, as hereinbefore mentioned and provided." It further provided as follows: "This bond shall be void if the member named herein shall die in consequence of a duel or by the hands of justice, or in violation of, or attempt to violate, any criminal law of the United States, or of any State or country in which the member herein named may be." Upon the trial the judge excluded evidence offered by the defendant to show that Darrow committed suicide, upon the ground that that would not be a defense to the action.

*Held,* that he did not err in so doing. (LEARNED, P. J., dissenting.)

Neither suicide, nor the successful attempt to commit it, is made a crime by the Penal Code of this State. (Per LANDON, J.)

APPEAL from a judgment in favor of the plaintiff, entered at the Saratoga Circuit upon a verdict directed by the court, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

This action was brought upon a policy of insurance or certificate of membership issued by the defendant, a corporation organized under chapter 175 of the Laws of 1883, upon the life of James H. Darrow for the sum of $5,000.

The policy, or as it is styled by its own terms the bond, bears date January 14, 1885, is issued under the corporate seal and the signatures of the vice-president and secretary of the defendant, and, among other things, binds the defendant to pay to the plaintiff (then the wife, now the widow, of the insured), "within sixty days after the receipt of satisfactory evidence to the society of the death of the within named member, during the continuance of this bond in full force, * * * five thousand dollars from the death fund of this society, at the time of said death, as hereinbefore mentioned and

provided." The defendant is what is known as an assessment insurance society, and the scheme of raising the funds to pay the death claims is set out in the bond and is as follows: "Whenever the death fund is insufficient to meet the existing claims by death, a call shall be made upon this entire class of membership in force, * * * but not more than one call shall be made to meet one death claim. Eighty per cent of the net amount received from such call shall be deposited in a bank and be used for the payment of death claims only, and the remaining twenty per cent shall be set apart as a reserve fund and deposited in a trust company to be accumulated to meet any contingency that may arise by reason of extra mortality, if any." The bond further provides as follows: "This bond shall be void if the member named herein shall die in consequence of a duel or by the hands of justice, or in violation of, or attempt to violate, any criminal law of the United States, or of any State or country in which the member herein named may be."

The answer tendered but two issues that are material to this appeal: First. That the bond was made payable only out of the death fund, and payment was conditioned on the sum being realized from an assessment, and that there was not any money in the death fund applicable to the payment of the bond. Second. That the bond was void if the deceased should die in violation of, or attempt to violate, any criminal law of the United States, or of any State or country in which he might be, and that he died in the State of Now York from the effects of poison taken and administered by himself with intent to take his own life in violation of the criminal law of the State. For the purpose of showing suicide of the deceased the defendant offered certain evidence, to which the plaintiff objected on the ground that suicide was not one of the causes specified in the policy which would avoid it, and was no defense to the action. The court sustained the objection.

*George Wilcox*, for the appellant.

*Edgar T. Brackett*, for the respondent.

LANDON, J.:

The question is whether the insured died "in violation of, or attempt to violate, any criminal law of the United States, or of any

State or country in which the member may be." I think that suicide, or the successful attempt to commit it, is not made a crime by our Penal Code. " A crime is an act or omission forbidden by law and punishable upon conviction by," etc. (Sec. 3.) "Although suicide is deemed a grave public wrong, yet, from the impossibility of reaching the *successful* perpetrator, no forfeiture is imposed." (Sec. 173.) Attempting suicide is made a crime. (Sec. 178.) It is thus defined : "A person who, with intent to take his own life, commits upon himself any act dangerous to human life, or which, if committed upon or towards another person and followed by death as a consequence, would render the perpetrator chargeable with homicide, is guilty of attempting suicide." (Sec. 174.) It seems to follow that the attempt to commit suicide, if successful, is suicide and no crime, but only "a grave public wrong," but if unsuccessful, is a crime. Section 685 — which provides that "a person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime was consummated, unless the court in its discretion discharges the jury and directs the defendant to be tried for the crime itself " — can, from the nature of the case, have no application to an attempt to commit suicide. The attempt is the crime itself. To bring it within the section there should be an attempt to attempt to commit suicide. If there is an attempt to commit suicide, the success of the attempt does not consummate the crime, but avoids it. How could the jury be discharged and the defendant be tried for the crime itself ? What crime ? The section must be limited to the cases to which it can apply.

The objection that this action, being at law, could not be maintained because there was not sufficient proof of money in the death fund of the defendant, is satisfactorily answered in the opinion of the presiding justice.

I advise an affirmance of the judgment and order.

BOCKES, J. :

The condition in the "bond" counted on is as follows : " This bond shall be void if the member named herein shall die   *   *   * in violation of or attempt to violate any criminal law," etc.; that is, shall die in violating or in attempting to violate any criminal law. Admit, as it must be admitted under the exceptions to the exclusion

of evidence, that Darrow committed suicide: was this condition broken? It would not be broken by the act of suicide; for suicide, although "a grave public wrong," is not within the reach of criminal law. (Penal Code, § 173.) But did he not, under the above admission, attempt suicide, which is itself a crime? (Penal Code, §§ 174, 178.) Certainly he did; yet he did not die in the commission of the *attempt* as an independent *act.* The attempt as an independent *act* is the crime declared by law; that is an unsuccessful act, having suicide for its consummated purpose. It is the unsuccessful act which is made punishable as a crime (sec. 178), not the successful act, which is beyond the reach of punishment under municipal law. An attempt implies a want of successful purpose. Of this Darrow did not die. He died of a successful purpose. He, therefore, did not die of the attempt, which, as a separate and independent act, is by law declared to be a felony, and made punishable as such. The offense contemplated by the Criminal Code (the attempt) is an offense for which the offender may be punished by imprisonment in the State prison. Such was not Darrow's offense. The mere reading of section 685 of the Penal Code shows the inapplicability of that section to this case. That provides for an act which the perpetrator survives. It must follow, therefore, that he did not die "in violation" of that provision of the Criminal Code (and there is no other applicable to the case), which makes an attempt to commit suicide an offense for which punishment is provided. As above suggested, this provision of law had in contemplation a punishable offense, to wit: an attempt, without success, to commit suicide; and, as is also above suggested, of this he could not die. If the above conclusion be sound, proof that Darrow committed suicide would not show that he died "in violation of or attempt to violate any criminal law," because of which, according to its provisions, the "bond" in suit would be void.

It may be added that there was proof of money belonging to the death fund, applicable to the "bond" in suit, to the extent of the recovery.

The judgment and order appealed from should be affirmed, with costs.

LEARNED, P. J. (dissenting)

This is an action on a policy of insurance or certificate of membership or bond, issued by defendant to James H. Darrow. The

defendant is incorporated under chapter 175, Laws of 1883, and does the business of life insurance on the co-operative or assessment plan. By the policy of insurance (or bond, as defendant calls it) the defendant, within sixty days after evidence of the death of Darrow, was to pay the plaintiff $5,000 "from the death fund of the society at the time of said death, as hereinbefore mentioned and provided." It was further provided therein that whenever the death fund is insufficient, a call should be made on members. Eighty per cent of the amount received should be used for payment of death claims, and twenty per cent should be set apart as a reserve fund, to meet any contingency by reason of extra mortality. No special sum is mentioned which is to be called for in case of deficiency in the death fund. It must be understood that so much shall be called for that eighty per cent shall be sufficient to pay the death claim. It is further provided in the bond that it shall be void if the member named therein "shall die  *  *  *  in violation of, or attempt to violate any criminal law  *  *  *  of any State or country in which the member herein may be."

Two defenses are set up: First. That there was not sufficient money in the death fund. Second. That Darrow committed suicide. The judge excluded evidence on the latter point on the ground that it was no defense, and ordered a verdict for plaintiff, and the defendant appealed. · In considering the second defense we remark that the case of *Fitch* v. *The American Popular Life Insurance Company* (59 N. Y., 557) is not to the point. There was nothing in that policy in that case which made suicide a defense. *Patrick* v. *Excelsior Life Insurance Company* (67 Barb., 202) does not apply. That held that "the known violation of any law" was a phrase which did not include suicide. It is not necessary to consider that suicide was a felony at common law, punishable by forfeiture of goods (4 Bl. Com., 189), because section 2 of the Penal Code declares what shall be crimes after that Code takes effect. Section 174 declares that any person who, with intent to take his own life, commits upon himself any act dangerous to human life, or which, if committed upon or towards another person and followed by death as a consequence, would render the perpetrator chargeable with homicide, is guilty of attempting suicide. Section 178 provides for punishment. Section 684 provides that a person may be

convicted of an attempt to commit a crime, although it appears on the trial that the crime was consummated, unless the court in its discretion discharges the jury and directs the defendant to be tried for the crime itself. Hence it follows, under the Penal Code, that the attempt to commit a crime is not so merged in success that the defendant may not still be punished therefor. It is true that when an attempt to commit suicide has been successful the guilty person cannot be punished because he is dead. That is the case with every criminal. He cannot be punished for his crime if he dies before trial.

Evidence was offered at the trial which, if admitted, might have shown that the deceased violated the above cited section 174 of the Penal Code. If, with intent to take his own life, he took poison, then he was guilty of the crime specially declared by that section. There is a general provision in section 686 as to unsuccessful attempts to commit crimes, regulating the punishment by reference to this punishment imposed on the crime itself.

But section 174 is an independent enactment, declaring certain acts to be crimes, and section 178 declares the punishment, with no reference to the crime said to be attempted. If, then, the deceased had done the act, of which evidence was offered, and he had lived for several months afterwards, he might, during his life, have been indicted and convicted under that section 174.

It must be noticed that the provision of the policy specifies death in violation of a criminal law, and also death in an attempt to violate such law. Either of these makes void the policy. Nor is it therein expressly required that the attempt to violate be itself a crime. Now the evidence excluded tended to show a violation of a criminal law, and not merely an attempt to violate. *Attempting suicide is itself a crime, and not accurately an attempt to commit a crime.* (Sec. 34.) And the reason why the law was thus drawn was probably from the doubt whether suicide was a crime.

The question then arises, did the deceased die in violation of a criminal law? Of course the language used in the policy cannot have a literal meaning. It cannot mean to express a case where the insured was forbidden to die by some criminal law, and where his death was therefore in violation of the law. It must indicate a case where the death occurs in consequence of or in the course of

the violation of a criminal law.  As, for instance, if the insured were committing a burglary, and were killed in the act, and in consequence thereof.  The object aimed at in this provision of the policy is that the company shall not be liable when the death of the insured is his own criminal fault.  Thus the other circumstances which make the policy void are death in a duel or by the hands of justice.  By analogy with these we may see that to die in violation of a criminal law means to die by reason of, or in consequence of, or in course of, a violation of a criminal law.

Now the evidence excluded tended to show that the deceased did commit the crime of attempting suicide, and that in consequence of such attempt he died.  It is argued by plaintiff that one cannot die in the *attempting* suicide.  But may not one die in the commission of a burglary?  Does not one die in violation of law when he dies in direct consequences of such violation?  What other reasonable meaning can this provision have?

It is argued for the plaintiff that the evidence shows that the deceased not only committed the crime of attempting suicide, but that he succeeded.  And the plaintiff argues that suicide is not a crime under the definition in section 3, Penal Code, and the statement in section 173.  But the answer is that the Penal Code, as already shown, makes certain acts to constitute a certain crime, viz., that of attempting suicide.  And the person who commits those acts is, at the very time of committing, guilty of that crime, although it may be that the consequence of his crime will be such that he cannot be punished.  The man who attempts to commit a murder is none the less guilty if he himself be killed in the attempt, and if he, therefore, cannot be punished.  If this deceased had thrown a dynamite bomb into a crowd, with intent to kill some person, and the explosion had killed no one but himself, would he not have died in the attempt to violate a criminal law?

The plaintiff argues that if the deceased succeeded in committing suicide he passed beyond any crime and did that which, by the Penal Code, is no crime.  But (assuming the evidence to prove what is claimed) he did the acts set forth in section 174, that is, with intent to take his own life, he committed on himself an act dangerous to human life.  Therefore he committed the crime by that section defined.  If he died a month or an hour afterwards, had he any the

less committed a crime? I am of the opinion that evidence tending to prove that the deceased committed the crime of attempting suicide, and that he died in consequence thereof, should have been admitted. There was a general exclusion of such evidence and, therefore, I do not specify any. On the other point, viz., that there was not sufficient money in the death fund, these facts must be noticed. Darrow died December 11, 1885. A call was made March 4, 1886, reciting Waas' death, which showed a balance on hand of $1,807.58. This·call produced for the death fund $11,282.48. Waas' claim was $5,000. By a subsequent call of May 1, 1886, reciting the death of one Arnold, February 18, 1836, it appears that part of the residue had been applied to a Dewey claim, and on this claim. The society does not make a call on every death, but only when the death fund is insufficient. The call made upon Waas' death after paying his claim would place in the death fund over $8,000. If there was money in the death fund from which plaintiff's claim could be payable (and it became payable about March 14, 1886), then there would be no defense on that ground, though there had been a diversion to other objects. There was, we think, evidence enough, in the absence of any contradictory evidence, to establish the plaintiff's case on this point.

For the reasons above given I think there should be a reversal of the judgment and a new trial, costs to abide the event.

Judgment affirmed, with costs.