# JANUARY, 1923

AMERICAN NATIONAL INSURANCE COMPANY v. MARY COATES ET AL.

No. 3381.   Decided January 3, 1923.

(246 S. W., 356.)

1.—Public Policy.

Each State has the power, by constitutional or statutory authority, to declare its own public policy.   (p. 274).

2.—Same—Forfeiture of Estate—Life Insurance—Execution for Capital Crime.

The provision of article 1, section 21, of the Constitution and article 2465 of the Revised Statutes, that no conviction shall work forfeiture of estate, is a declaration of public policy by the State of Texas applying to the proceeds of an insurance policy as well as to the inheritable estate of the insured.   (p. 276).

3.—Same.

One insured by an incontestible life policy in a domestic insurance company and by a Texas contract, was, years after its issuance, executed under conviction by a Texas court for the crime of murder. *Held*, that the public policy of the State did not render such insurance policy unenforceable, and that the beneficiaries could recover thereon. American Insurance Co. v. Munson, 202 S. W., 987, disapproved. · (pp. 273-277).

Question certified from the Court of Civil Appeals for the Second District, in an appeal from Tarrant County.

The Supreme Court referred the question to the Commission of Appeals, Section A, for their opinion, and same, being approved, is certified to the Court of Civil Appeals as the answer of the Supreme Court.

*C. W. Nugent, Thompson, Barwise, Wharton & Hiner, Alfred Mc-Knight,* and *F. B. Walker,* for appellant.

· The evidence and the pleadings in this case show, without contradiction that the insurance policies sued upon by appellees were issued upon the life of Rufus Coates and that subsequent to the issuance of said policies, to-wit: Nov. 8, 1918, the said Rufus Coates met his death at the hands of the law, that is, by legal execution, for conviction of crime, that is, for the murder of Zella Faulk. The court should not have permitted a recovery for any sum other than $7.70, the amount of premiums paid on the said policies since alleged killing of Zella Faulk, for the reason that it is against the public policy of this State to permit a beneficiary to recover on an insurance policy

where the assured has met his death by legal execution for crime. American National Insurance Company v. Munson, 202 S'. W., 987; Scarborough v. American National Insurance Co., 171 N. C., 353, 88 S. E., 482; Burt v. Union Central Life Ins. Company, 187 U. S., 362; Northwestern Mutual Life Insurance Company v. McCue, 223 U. S., 234; Box v. Lanier, 112 Tenn., 393, 79 S. W., 1042; Supreme Commandery Knights Golden Rule v. Ainsworth, 71 Ala., 436, 46 Am. Rep., 332; Amicable Insurance Society v. Bowlin, 2   Dow & Clark, 1.

The fact that a life insurance policy contains a clause or stipulation providing in effect that the policy shall be incontestable after two years for any cause, does not give the beneficiaries the right to recover thereon when the assured met his death by legal execution as punishment for crime. American National Insurance Company v. Munson, 202 S. W., 987; Scarborough v. American National Ins. Co., 171 N. C., 353, 88 S. E., 482. Collins v. Metropolitan Life Ins. Co., 27 Pa. Super. Ct., 356.

The public policy of this state is not shaped or declared by article 4741 Revised Statutes providing in effect that all life insurance policies shall contain a clause providing that the said policy and application shall constitute the entire contract between the parties and shall be incontestable not later than two years from its date, except for nonpayment of premiums, in such a manner as to permit a recovery on a life insurance policy where the assured meets his death by legal execution as punishment for crime. Neither Section 21, of Article 1 of the Constitution of this State, nor Article 2465, Revised Statutes, both providing in effect that conviction for crime shall not work corruption of blood or forfeiture of estate and also that the estate of those who destroy their own lives shall descend and vest as in the case of natural death, change or shape the public policy of this State so as to permit a recovery by a beneficiary on the life insurance policy where the assured meets his death by legal execution as punishment for crime. American National Ins. Co. v. Munson, 202 S. W., 987, and all other authorities first above cited.

*Slay, Simon & Smith, A. W. Christian,* and *C. E. McGan,* for appellees.

It is not against the public policy of this State to permit a beneficiary to recover on an insurance policy where the insured has met death by legal execution as a punishment for crime, or where he loses his life by his own criminal action. Vernon's Sayles' Civil Statutes, Art. 4741, Subd. 3; Section 21 of the Constitution of Texas'; Vernon's Sayles' Civil Statutes, Art. 2465; American Mutual Benefit Assoc. v. Joshua, 200 S. W., 261; Floyd v. Illinois Bankers Life Assoc., 192 S. W., 609; Southern Union Life Co. v. White, 188 S. W., 266; Greenhood on Public Policy, pp. 1-5; Collins v. Metropolitan

Life Ins. Co., 83 N. E., 542, 232 Ill., 37, 14 L. R. A., (N. S.), 356; Sun Life Ins. Co. v. Taylor, 56 S. W., 668, 108 Ky., 408; Lord v. Dall, 7 Am. Dec., 38, 12 Mass., 115; Harper v. Phoenix Ins. Co., 19 Mo., 507; McDonald v. Order of Triple Alliance, 57 Mo. App., 87; Simpson v. Life Ins. Co. of Va., 115 N. C., 396, 20 S. E., 517; Holdom v. Ancient Order United Workmen, 31 L. R. A., 67-70, 159 Ill., 619; Patterson v. Natural Premium, etc. Co., 100 Wis., 118, 75 N. W., 980, 42 L. R. A., 253, 69 Am. Rep., 899; Jackson v. Loyal Additional Benefit Assoc., 205 S. W., 318 (Tenn.).

An insurance company cannot set up a defense to defeat an ordinary life insurance policy, where the insured is executed as punishment for crime, where the policy contains a provision that it shall be incontestable after a specified time, and cannot be contested by the insurance company on any ground not excepted in the incontestibility clause, nor excepted in the provisions of the statute as to what life insurance policies shall contain. Article 4741, Subd. 3, Revised Civil Statutes; Southern Union Life Ins. Co. v. White, 188 S. W., 266; American Nat'l. Ins. Co. v. Briggs, 156 S. W., 909; Franklin Ins. Co. v. Villeneuve, 25 Texas Civ. App., 356, 60 S. W., 1014; Greenhood on Public Policy, page 5; New York Life Ins. Co. v. Baker, 83 Fed., 647, 27 C. C. A., 658; 3 Joyce on Insurance, Sec. 265; 2 May on Ins., Sec. 39; Cook, Sec. 7; Bliss on Life Ins., Sec. 330; Collins v. Metropolitan Life Ins. Co., 232 Ill., 37, 83 N. E., 542, 14 L. R. A. (N. S.), 356; Patterson v. Natural Premium Mutual Life Ins. Co., 100 Wis., 118, 75 N. W., 980, 42 L. R. A., 253, 69 Am. Rep., 899; Mareck v. Mutual Reserve Fund Ins. Co., 62 Minn., 39, 64 N. W., 68, 54 Am. St. Rep., 613; Simpson v. Life Ins. Co. of Va., 115 N. C., 396, 20 S. E., 517; Goodwin v. Provident Co., 97 Iowa, 226, 66 N. W., 159, 32 L. R. A., 475; Jackson v. Loyal Benefit Assoc. (Tenn.), 205 S. W., 318; Clement v. New York Life Ins. Co., 101 Tenn., 22, 42 L. R. A., 247; Vetter v. Massachusetts Ins. Co. (N. Y.), 29 App. Div., 72; Tinsley v. Aetna Ins. Co. (Mo. App.), 205 S. W., 78; Shellenberger v. Ranson, 41 Nebr., 641, 25 L. R. A., 564, 59 N. W., 935; Harris v. Security Life Ins. Co., 154 S. W., 69 (Mo.); Mutual Life Ins. Co. v. Lovejoy (Ala.), 78 So., 299, L. R. A., 1918-D, 860; Fitch v. American Popular Life Co., 59 N. Y., 557, 17 Am. Rep., 372.

An insurance company cannot set up a defense to defeat an ordinary life insurance policy, where the insured met his death by legal execution as punishment for crime, even though the policy excepts such risk from its provisions, where there is an incontestability clause contained in the policy, and its terms have been fulfilled and where such exception is not contained in the provisions of the statute as to what life insurance polices shall contain. Article 4741, Revised Civil Statutes of Texas; Southern Life Ins. Co. v. White, 188

S. W., 266; American Nat'l. Life Ins. C. v. Briggs, 156 S. W., 909; Mutual Reserve Fund Life Assn. Payne, 32 S. W., 1063; Franklin Ins. Co. v. Villeneuve, 60 S. W., 1014; Guaranty Life Co. v. Everet, 178 S. W., 643; Arnold v. Equitable Life Ass. Soc., 228 Fed., 157, Mutual Reserve Fund Life Assn. v. Austin, 142 Fed., 398, 6 L. R. A. (N. S.), 1064; Greenhood on Public Policy, page 5; Sun Life Ins. Co. v. Taylor (Ky.), 56 S. W., 663; Collins v. Metropolitan Life Co., 232 Ill., 37, 83 N. E., 542, 14 L. R. A. (N. S.), 456; Dibble v. Reliance Ins. Co., 170 Cal., 199, 149 Pac., 171; Massachusetts Benefit Assoc. v. Robinson, 104 Ga., 256, 42 L. R. A., 261, 30 S. E., 918; Royal Circle v. Achterrath, 204 Ill., 549, 63 L. R. A., 452, 98 Am. St. Rep., 224, 68 N. E., 492; Indiana Life Ins. Co. v. McGinnis (Ind.), 45 L. R. A. (N. S.), 192, 101 N. E., 289; Jackson v. Loyal Benefit Assoc. (Tenn.), 205 S. W., 318; Mutual Life Ins. Co. v. New (La.), 27 L. R. A. (N. S.), 431, 136 Am. St. Rep., 336, 51 So., 61; Wright v. Mutual Benefit Life Assoc., 118 N. Y., 237, 6 L. R. A., 731, 16 Am. St. Rep., 749, 23 N. E., 186; Citizens Life Ins. Co. v. McClure (Ky.), 127 S. W., 749; Harris v. Security Life Ins. Co. (Mo.), 154 S. W., 68; Clement v. New York Life Co., 101 Tenn., 22, 42 L. R. A., 247, 10 Am. St. Rep., 650, 46 S. W., 561.

The public policy of this state is declared by its Constitution, statutes and judicial decisions, and has been declared so as to permit the recovery on an insurance policy when the insured meets death as punishment for crime, where such risk is not expressly excepted from the incontestability clause in the policy, nor excepted from the provision of the statutes of this State providing what life insurance policies shall contain. See authorities under 4th counter-proposition, supra. Also the following: Southern Life Ins. Co. v. White, 188 S. W., 266; Lloyd v. Illinois Bankers Life Ins. Co., 192 S. W., 607; American Nat'l. Ins. Co. v. Briggs, 156 S. W., 909; Guaranty Life Ins. Co. v. Everett, 178 S. W., 643; American Nat'l. Ins. Co. v. Hawkins, 189 S. W., 331; First Tex. State Ins. Co. v. Bell, 184 S. W., 277; Greenhood on Public Policy, page 5; Jackson v. Loyal, etc. Co. (Tenn.), 205 S. W., 318; Sun Life Ins. Co. v. Taylor, 56 S. W., 663 (Ky.); Citizens' Life Ins. Co. v. McClure, 27 L. R. A. (N. S.), 1026.

MR. JUDGE RANDOLPH delivered the opinion of the Commission of Appeals, Section A.

The court of Civil Appeals for the Second Supreme Judicial District of Texas has submitted to the Supreme Court of Texas the following statement and certified questions in the above styled cause, and same has been referred to us for consideration and report thereon:

"In the District Court of Tarrant County, Texas, Rufus Coates was duly and legally indicted, tried, convicted and sentenced to be hanged for the murder of Zella Faulk, committed on June 3, 1917,

and, in obedience to a warrant from that court, he was legally executed on November 8, 1918. Prior to the commission of that offense, he had obtained from the American National Insurance Company two life insurance policies, each for the sum of $135, the first. dated May 4, 1908, and the second dated April 10, 1911. The insurance company was chartered under and by virtue of the laws of the State of Texas, and its principal office and place of business was in Galveston, which was the place of payment of all premiums, and the insured and the beneficiary both resided in Texas. Hence, the policies were contracts governed by the laws of this State. Each policy contained these provisions:

'Incontestability. This policy shall be incontestable after two years from its date of issue for the amount due, provided premiums have been duly paid, except for fraud. . . . . . .

In event of the death of the insured the Company may pay the sum of money due under this policy to the families, heirs, blood relatives, affianced husband or affianced wife, or to persons dependent upon the insured at the time of death and the production by this Company of a receipt signed by any of either of said persons, shall be conclusive evidence that such sum has been paid to the persons entitled thereto, and that all claims under this Policy have been fully satisfied.'

. . . . . . . . . . .

'In the event of the death of the insured from suicide, whether sane or insane, within one year from the date hereof, the liability of the Company shall be limited to a return of the premiums paid on this Policy.'

. . . . . . . . . . .

"'This policy is issued upon an application which omits the warranty usually contained in applications, and contains the entire agreement between the Company and the insured and the holder and .owner hereof.' . . . . . . .

At the time of the death of Rufus Coates, all premiums accruing on said policies had been duly paid and the policies were then in full force and effect. After his death, Mary Coates, his mother, and admittedly the rightful and only beneficiary of the policies, duly presented to the insurance company notices of her claims of benefits, and proofs of death, all in compliance with the terms of the policies and the requirements of the statutes applicable thereof. The insurance company refused payment of the amount claimed by the insured, to-wit, the sum of $270, which was the aggregate of benefits named in the two policies, but tendered to Mary Coates the sum of $7.70 in full liquidation of the two policies, the amount so tendered being the aggregate of all premiums paid on the policies from the date of the murder of Zella Faulk to the date of the execution of Rufus Coates. That tender was refused by Mary Coates, who, joined

by her husband, instituted this suit in the county court against the company to recover the amounts stipulated in the policies, together with statutory interest, penalties and attorneys' fees for the failure of payment.

A judgment was rendered in favor of plaintiff against the company for the amount of the second policy with interest penalties and attorneys' fees, but denying a recovery on the first policy. Both parties duly excepted to the judgment and gave notice of appeal. The defendant has perfected its appeal, and the plaintiff, after replying to defendant's assignments of error, has presented cross assignments to that portion of the judgment denying her a recovery on the first policy.

All assignments contained in briefs for the defendant company present the contention that notwithstanding the incontestable clause in the policies it would be against the public policy of this state to permit a recovery upon either insurance policy, since the insured came to his death at the hands of the law as a penalty for the commission of a crime; that by reason of such public policy his death, which was legally inflicted for a crime committed, was not an insurable risk, but was excepted therefrom, notwithstanding the clause of incontestability contained in the policies, and notwithstanding that by the provisions of Article 4741 of our statutes, which was enacted in 1909, the company was required to insert that clause in the second policy which was issued after its passage. That defense was presented in the defendant's answer to plaintiffs' petition, and defendant also pleaded the tender of premiums received from the insured.

The converse of those propositions is the only contention presented in briefs for the plaintiff, both in reply to defendant's assignments and by cross assignments to the refusal of the court to allow a recovery on the first policy of insurance, as well as on the second.

On a former day of its present term, this court overruled the contention so presented by defendant, and sustained the cross assignment presented by plaintiff to the refusal of the court to allow a recovery on the first policy as well as the second; and the judgment of the trial court was so reformed as to allow a recovery on both policies.

The conclusion reached by this court that neither of the contracts of insurance against the death of Rufus Coates inflicted as a punishment for crime was forbidden by the public policy of this State, is in conflict with the decision of the Court of Civil Appeals of the Ninth Judicial District in the case of American National Insurance Company v. Munson, 202 S. W., 987.

Appellant has filed in this court a motion for rehearing, which is still pending; also a motion to certify to your Honorable Court the question on which the two courts are in conflict. The latter motion has been granted.

Accordingly, by reason of said conflict, and because, aside from such conflict, we deem it advisable so to do, we certify to your Honorable Court for determination, whether or not this court erred in the conclusion reached upon the issue stated above.    A copy of our opinion accompanies this certificate.''

There are quite a number of cases outside of this State holding that recovery cannot be had upon a life insurance policy where the insured has been convicted and executed for a capital crime.    Burt v. Union Central Life Ins. Co., 187 U. S., 362, 23 Sup. Ct. 139, 47 L. Ed., 216; Northwestern Mutual Life Ins. Co. v. McCue, 223 U. S., 234, 32 Sup. Ct. 220, 56 L. Ed., 419, 38 L. R. A. (N. S.) 57; Scarborough v. American Nat. Ins. Co., 171 N. C., 353, 88 S. E., 482, L. R. A., 1918A, 896, Ann. Cases, 1917D, 1181; Collins v. Metropolitan Life Ins. Co. 27 Pa. Super. Ct., 353; Ritter v. Insurance Co. 169 U. S., 139, 18 Sup. Ct., 300, 42 L. Ed., 693; but they are based upon the holding in the case of Amicable Society v. Bolland, decided by the House of Lords of England and reported in Bligh N. S. 194-211, or are rendered in cases where there are no constitutional or statutory provisions declaratory of a contrary public policy.    The decision in the Bolland case, *supra,* was rendered at a time when the laws of England recognized and enforced forfeitures as a punishment for crime and the declaration of a public policy taken from the laws and decision was in harmony with the laws of England.

However, we cannot agree to the reasoning in that case and to illustrate why we cannot agree we quote from that opinion as follows:

''It appears to me that this resolves itself into a very plain and simple consideration.    Suppose that in the policy itself this risk had been insured against: that is, that the party insuring had agreed to pay a sum of money year by year, upon condition, that in the event of his committing a capital felony, and being tried, convicted, and executed for that felony, his assignees shall receive a certain sum of money—is it possible that such a contract could be sustained?    Is it not void upon the plainest principles of public policy?    Would not such a contract (if available) take away' one of those restraints operating on the minds of men against the commission of crimes— namely, the interest we have in the welfare and prosperity of our connexions,    Now, if a policy of that description with such a form of condition inserted in it in express terms, cannot, on grounds of public policy, be sustained, how is it to be contended that in a policy expressed in such terms as the present, and after the events which have happened, that we can sustain such a claim?    Can we, in considering this policy, give to it the effect of that insertion, which if expressed in terms would have rendered the policy, as far as that condition went, at least, altogether void?''

112 Tex.—18

The reasoning in the above quotation does not appeal to us. The hypothetical case stated presents one entirely different from the case the House of Lords was considering and from the case at bar. In the hypothetical case stated there is a contract contemplating the commission of a capital crime. No one would have the hardihood to say that a contract, requiring the commission of a crime before the consideration would inure to the benefit of the insured, would not be against public policy in any civilized country, as it operates to induce him to violate the laws of his country. In the instant case, one of the policies was executed May 4, 1908 and the other April 10, 1911. The insured was hanged November 8, 1918. Between the date of the last issued policy and the date of the death of the insured at the hands of the law, more than seven years had elapsed. To presume that the insured at the time he obtained the insurance had in his mind an intention to commit a capital felony is to do violence to human nature. Criminals are supposed to have incentives inducing them to commit offenses, and the law requires in capital cases that a motive be shown for the commission of the crime. In this case, if the penalty of life imprisonment or death did not deter the insured from the commission of the crime, it would be a far fetched conclusion and presumption to say that he might have committed the crime so that his mother could collect two or three hundred dollars insurance. To indulge in such a presumption requires that we believe that the insured had in his mind an intention of committing a capital felony for many years, and that during all that time he carried within him "a heart regardless of social duty and fatally bent on mischief"—and was only waiting for an opportune time to vent his malice.

The Burt case, *supra*, is not in conflict with our holding in this case and neither is the McCue case. The Constitution of the United States contains no such provision as does our State Constitution prohibiting forfeitures of estates for crimes, and consequently that decision is not declaratory of the public policy of this State. Each state in the union has the power, by constitutional or statutory enactments, to declare its own public policy.

The case of Collins v. Metropolitan Life Ins. Co., 232 Ill. 37, 14 L. R. A. (N. S.), 356, 122 Am. St., 54, 13 Ann. Cases, 129, 18 N. E., 542, declares upon that subject as follows:

"Each nation or State having the power to adopt a constitution and legislate for itself necessarily has the inherent power to declare its own rules of public policy. There is nothing in international law or the comity between our States that requires our courts to enforce the consequences following the conviction for felony in obedience to the public policy of the State where the conviction is had, when to do so would be to depart from our own public policy on the same subject."

This right or power is recognized in the McCue case, *supra,* where the Supreme Court of the United States says:

"The obligation of a contract undoubtedly depends upon the law under which it is made. In which state, then, Virginia or Wisconsin, was the policy made? In Equitable Life Assur. Soc. v. Clements (Equitable Life Assur. Soc. v. Pettus), 140 U. S., 226, 35 L. ed., 497, 11 Sup. Ct. Rep., 822, the question arose whether the contract of insurance sued on was made in New York or Missouri. The assured was a resident of Missouri, and the application for the policy was signed in Missouri. The policy, executed at the office of the company, provided that the contract between the parties was completely set forth in the policy and the application therefor, taken together. The application declared that the contract should not take effect until the first premium should have been actually paid during the life of the person proposed for assurance. Two annual premiums were paid in Missouri, and the policy, at the request of the assured, was transmitted to him in Missouri, and there delivered to him. The court said: "Upon this record the conclusion is inevitable that the policy never became a completed contract, binding either party to it, until the delivery of the policy and the payment of the first premium in Missouri; and consequently that the policy is a Missouri contract, and governed by the laws of Missouri."

The insured and the plaintiffs in this cause being all residents of the State and the appellant being a corporation organized under the laws of this State, it is clear that the public policy of this State must control in the disposition of this case.

Entertaining these views in order that we should hold that the policies sued on are unenforceable, we would have to hold that the very fact that a man is convicted and executed for the commission of a capital crime, of itself, operates as a matter of public policy to void the contract of insurance, which we cannot do.

The broadest definition of public policy that we can find in the books is that given in Third Volume, Page 2765, Bouvier's Law Dictionary quoted by the Court of Civil Appeals in their opinion which definition is as follows:

"It is that principle of law which holds that no subject can lawfully do that which has a tendency to be injurious to the public or against the public good."

Working the proposition out under this definition, can it be said that these contracts of insurance and the enforcement thereof are injurious to the public or against the public good? The question must be answered no, unless it is answered yes, on the theory that, in addition to the death penalty inflicted on him, the insured is to be further penalized by having his right to make provision for his mother, in the event of his death, taken from him.

Further definition of the phrase "public policy" is given by the same author on the said page 2765 as follows:

"Public policy is imposed by public acts, legislative and judicial, and not by private opinion, however eminent. It is said to be determined from legislative declarations, or, in their absence, from judicial decisions."

If the public policy of a State is manifested by public acts, legislative or judicial, then there is nothing in either in this State to indicate that the public policy is opposed to the enforcement of the policies sued on herein. There are no decisions in this State so holding except the decision in the case of American Insurance Co. v. Munson, by the Beaumont court, cited in the certificate of the Court of Civil Appeals, and which is in direct conflict with the decision by the Ft. Worth court in this case. On the contrary, there is in our opinion, an express declaration of the policy of this State as set out in Article 1, Section 21, of our State Constitution, and in Article 2465, Vernon's Civil Statutes.

Article 1, Section 21, of the Constitution of Texas is as follows: -

"No conviction shall work corruption of blood or forfeiture of estate; and the estates of those who destroy their own lives shall descend or vest as in case of natural death."

Article 2465, Vernon's Civil Statutes provides as follows:

"No conviction shall work corruption of blood or forfeiture of estate, nor shall there be any forfeiture by reason of death by casualty; and the estate of those who destroy their own lives shall descend or vest as in the case of natural death."

It being the policy of the State as declared by these constitutional and statutory provisions that no conviction shall work corruption of blood or forfeiture of estate, as applied to the inheritable estate of the party executed, we cannot see any reason why the same declaration should not be made to apply to the proceeds of an insurance policy, payable to beneficiaries who were in nowise a party to the offense against the law and, as in this case, who would be under our statute of descent and distribution the parties who would benefit by the inheritable estate. In the one case the property of the felon accumulated during a course of years in various ways is declared to be non-forfeitable, and we think that this declaration of policy should, by analogy apply to contractual rights which he has acquired for the benefit of those dependent upon him. The case of Collins v. Metropolitan Life Insurance Co., *supra*, presents our view of the question herein discussed and we quote from that decision as follows:

"If a man who is executed for crime has at his death $1000 in real estate, $1000 in chattels and $1000 life insurance payable to his estate, his real estate descends to his heir and his personal chattels to his administrator, but the $1000 life insurance must be left in

the hands of the company who has received the premiums because it is said to be contrary to public policy to require the company to pay, lest by so doing it lend encouragement to other policy holders to seek murder, and execution therefor, in order that their estates or heirs might profit thereby. This is defendant in error's position. This contention seems to border closely on the absurd. We know of no rule of public policy in this State that will enforce this species of forfeiture, but there is a rule of law which has often been applied when two parties make a valid contract and the same has been completely performed by one party and nothing remains except the performance by the other, which will compel performance or award damages for the default against the delinquent party."

We therefore recommend to the Supreme Court that the certified question be answered: That the public policy of the State of Texas does not render the insurance policies in this case unenforceable, but that same be valid and subsisting contracts collectable by law.

BY THE SUPREME COURT.

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.

*C. M. Cureton, Chief Justice.*