## HOPKINS v. NORTHWESTERN LIFE ASSUR. CO.

(Circuit Court, E. D. Pennsylvania. June 7, 1899.)

### No. 87.

1. LIFE INSURANCE—SCOPE OF CONTRACT—SUICIDE.

It is a term of every policy of life insurance, implied if not expressed, that the insured will not die by his own willful and deliberate act, and therefore, if he does die by such act, his life is terminated by a risk against which the company has not insured; and the fact that the beneficiary is a person other than the insured himself cannot enlarge the scope of the contract, nor authorize a recovery thereon.

2. SAME—PRESUMPTION OF SANITY.

Where it is shown that an insured person committed suicide, in the absence of evidence that he was insane at the time, his sanity will be presumed.

On Motion by Defendant for Judgment Notwithstanding the Verdict.

Bernard Gilpin, for plaintiff.
Simpson & Brown, for defendant.

McPHERSON, District Judge. In April, 1892, John S. Hopkins made a contract with the defendant,—then called the Northwestern Masonic Aid Association,—which for present purposes we shall assume to have been a contract of life insurance. By this policy his life was insured for $10,000 upon the assessment plan, the beneficiaries named therein being his wife, the plaintiff, if living, and, in case of her death, his children, or his heirs at law. The policy provided that a "change of beneficiaries can be made at any time, without charge, upon complying with the by-laws." It contained no express condition against suicide. In December, 1897, Mr. Hopkins decided to abandon the assessment plan, and accordingly applied to the company for a new policy of $10,000, similarly payable to his wife or children, but providing for the payment of a defined annual premium during a period of 20 years. The substitution

was made, the first policy was surrendered and canceled, and the second policy was delivered to Mr. Hopkins in the month just named. Mrs. Hopkins neither knew of nor consented to the change. The second policy contained the following condition: "If the insured shall die by his own hand or act, whether sane or insane, within two years from the date of this policy, * * * then this policy shall be void, and cease to be binding upon said company, except for the amount which the insurer has paid in premiums on account hereof." In March, 1898, Mr. Hopkins killed himself, the death occurring within two years from the date of the policy. The company tendered before suit, and has paid into court, the premiums paid by the insured.

The present suit is brought by Mrs. Hopkins upon the first contract, her position being that, because she did not consent to the substitution, she is not bound by the second policy, but may treat the first as still in force. To this the company objects, and devotes much of its argument upon this motion to the support of its objections. We do not think it necessary, however, to consider the argument upon this branch of the case. For the purposes of the motion now before the court, we shall adopt the plaintiff's position, and shall regard the first contract as still in force. We shall also regard it as a policy of insurance, and not a mere certificate issued by a mutual benefit association. The defendant avers that when the first contract was made it was a mutual benefit association, and not a life insurance company, and that the contract in suit is merely a certificate of membership, expressly providing for a change of beneficiaries at any time, in which Mrs. Hopkins could therefore have no vested interest to be prejudiced by the subsequent substitution of another policy upon a different plan. As already stated, however, we shall not consider this objection, but shall assume the contract to be a policy of life insurance, properly so called. Treated as a policy, it is silent concerning suicide, and the single question to be determined is whether, in the absence of such a condition, the contract covers the risk of deliberately self-inflicted death. There is no averment or proof that the insured was insane, and the presumption of sanity must, therefore, prevail.

Since the decision in Ritter v. Insurance Co., 169 U. S. 139, 18 Sup. Ct. 300, we do not think the question is open for discussion in the federal courts. In that case the application contained a warranty that the insured would not die by his own act, whether sane or insane, during a period of two years from the date of the policy; but the application was excluded by the trial judge, and the case was heard and considered by the supreme court upon the policy alone, which contained no such provision. Without quoting from the opinion, it is enough to say briefly that the decision is put upon the ground that, although the policy contained no condition against suicide, nevertheless such a condition is an implied term of the contract; and therefore, if the insured does commit suicide, there can be no recovery. It is true that in Ritter's Case the policy was made payable to the assured himself, or to his ex-

ecutors or administrators, while in the case before us the policy was made payable to the wife of the assured; but, in our opinion, this difference is not important. In either event, the terms, whether express or implied, of the contract, must control the right to recover; and, if these terms exclude the risk by which death is caused, no person whatever can have an enforceable right based upon such a death. We think it may be misleading to speak of the contract as being "avoided" in case of suicide. Such language is often used in policies, and finds its way thence into the decisions of the courts; but it seems to be more accurate to say that the contract does not insure at all against death by suicide. It is a term of the policy, express or implied, that the assured will not die by his own willful and deliberate act; and therefore, if he does die by such act, his life is terminated by a risk against which the company has not insured. Suicide does not "avoid" the policy; against this event, the policy does not exist.

It seems to follow that the quality and extent of the beneficiary's interest in the contract is of no importance. The question is, does the policy forbid suicide? If so, death by that act is a risk that is not insured against, and can therefore furnish no ground for recovery. The fact that the beneficiary is some other person than the insured himself cannot enlarge the scope of the contract. This, we think, is the answer to the reasoning of the supreme court of Pennsylvania in Morris v. Assurance Co., 183 Pa. 563, 39 Atl. 52, in which a different conclusion was reached upon the point now before us. With much respect for the opinion of that court, we are constrained to believe that this view of the contract was not sufficiently considered, for it is not discussed, and the decision appears to rest mainly upon the ground that the insured cannot defeat the gift to the beneficiary by his own fraudulent conduct afterwards. It seems to us that this begs the question. The beneficiary does not receive a gift of a policy against suicide, for the contract does not cover death by such an act, and therefore the insured does not take away what he did not and could not give. But, whatever weight should be allowed to this case in the courts of the state, we are bound to follow the decision in Ritter v. Insurance Co., and this is founded upon the principle that recovery cannot be had because the company has not insured against this particular risk. The principle is formally stated in the following sentence at the close of the opinion on page 160, 169 U. S. and page 307, 18 Sup. Ct.: "For the reasons we have stated, it must be held that the death of the assured  *  *  * was not a risk intended to be covered, or which could legally have been covered, by the policies in suit." As it seems to us, it must follow inevitably that the beneficiary can have no more extensive right of recovery than the personal representative of the assured; for in either case the suit must be upon the contract, and must be restricted to the subject-matter of the contract.

We direct judgment to be entered for the defendant upon the reserved point, notwithstanding the verdict. Exception to the plaintiff.