J. C. SCARBOROUGH ET AL. v. AMERICAN NATIONAL INSURANCE COMPANY.

(Filed 12 April, 1916.)

**1. Insurance, Life—Death by Execution—Policy—Interpretation.**

Whether stated in a policy of life insurance sued on or not, the policy itself does not contemplate the risk of loss against the death of the insured administered by the law as the punishment for the commission of a capital felony, for such maturity thereof would be in consequence of an act in contravention of sound principles of public policy as well as good morals.

**2. Same—Noncontestable Clause.**

The noncontestable clause in a policy of life insurance refers to the contract entered upon in accordance with its terms, and where the insured has been put to death under sentence of the law the insurer may plead this in defense of payment, notwithstanding the noncontestable clause.

CIVIL ACTION to recover on a life insurance policy, tried at September Term, 1915, of DURHAM, before *O. H. Allen, J.* There was a verdict and judgment for the plaintiff. Defendant appealed.

*Manning, Everett & Kitchin for plaintiff.*
*McLendon & Hedrick for defendant.*

BROWN, J. The defendant insured the life of Willie Bell, payable to his mother, Kitty Bynum, with right to change the beneficiary. The plaintiffs are the beneficiaries and are entitled to recover if the policy is in force. Willie Bell, the insured, was electrocuted on 8 July, 1915, in accordance with the sentence of the law, for the crime of murder. The policy contains no provision stipulating either for or against the liability of the company in the event the insured's life was taken in punishment for the violation of the laws of the State. The policy does, however, contain this provision: "This policy shall be incontestable after two years from its date of issue for the amount due, provided premiums have been duly paid, except for fraud."

23—171

Upon the facts stated, the only question presented on this appeal is, Does an ordinary life insurance policy, in the absence of any provision in regard thereto, insure against death by act of the law administered as a punishment for the commission of a capital felony?

We do not think that the parties to the contract contemplated such an extraordinary risk, or that the terms of the policy include it. If such a stipulation had been inserted in the policy, it would be insurance against the commission of crime, and void as against sound principles of public policy.

This identical case, as far as our researches show, was first decided by the House of Lords in the case of *Amicable Insurance Society v. Bolland,* 2 Dow and Clark, page 1, known as the *Fauntleroy case.* It was then held by the House of Lords that though the policy did not contain an exception of the liability of the insurer, in the event the assured came to his death by the hands of the law the exception would be implied, for the reason that an express contract for liability in such event would contravene sound principles of public policy as well as good morals.

The doctrine asserted in the *Fauntleroy case,* that death by the hands of public justice for the commission of crime avoids a contract of life insurance, is said by the Supreme Court of Alabama never to have been questioned, though the case itself may have led to the very general introduction of the exception into policies. *Knights of the Golden Rule v. Ainsworth,* 71 Ala., 447.

As is said in that case: "The extinction of life by disease or by accident, not by suicide voluntary and intentional by the assured, while in his senses, is the risk intended; and it is not intended that, without the hazard of loss, the assured may safely commit crime." Bliss on Life Ins., secs. 242, 243; Vance on Life Ins., p. 524.

This question was decided by the Supreme Court of the United States in the well known case of *McCue v. Northwestern Life Ins. Co.,* 223 U. S., 234, and in the case of *Burt v. Life Ins. Co.,* 187 U. S., 362.

In the former case it is stated: "The question was before this Court in *Burt v. Union Central Life Ins. Co.* In the policy passed on, as in the policy in the case at bar, there was no provision excluding death by the law. It was decided, however, that such must be considered its effect, though the policy contained nothing covering such contingency. These direct questions were asked: "Do insurance policies insure against crime? Is that a risk which enters into and becomes a part of the contract?' And, answering, after discussions, we said: 'It cannot be that one of the risks covered by a contract of insurance is the crime of the insured. There is an implied obligation on his part to do nothing to wrongfully accelerate the maturity of the policy. Public policy forbids the insertion in a contract of a condition which would tend to induce

crime, and as it forbids the introduction of such stipulation, it also forbids the enforcement of the contract under circumstances which cannot be lawfully stipulated for.'"

In *Ritter v. Mutual Life Ins. Co.*, 169 U. S., 139, it was held that a life insurance policy taken out by the insured for the benefit of his estate was avoided when one of sound mind intentionally took his life, irrespective of the question whether there was a stipulation in the policy or not, and the conclusion was based, among other considerations, upon public policy, the Court saying: "A contract the tendency of which is to endanger the public interest or injuriously affect the public good, and which is subversive of sound morality, ought never to receive the sanction of a court of justice or be made the foundation of its judgment." *Ritter v. Mutual Life Ins. Co., supra; Sup. Com. Knights of Golden Rule v. Ainsworth, supra; Plunket v. Sup. Com. I. O. H.*, 105 Va., 643; *Hartman v. Keystone Ins. Co.*, 21 Pa. St., 466; *Hopkins v. Northwestern Life Ins. Co.*, 94 Fed., 729; *Bloom v. Franklin Ins. Co.*, 97 Ind., 478.

The incontestable clause in this policy does not prevent the defendant from setting up the defense interposed in this action.

By the use of the term "incontestable" the parties must necessarily mean that the provisions of the policy will not be contested, and not that the insurance company agrees to waive the right to defend itself against a risk which it never contracted to assume. In *Collins v. Metropolitan Life Ins. Co.*, 27 Pa. Super. Ct., 345, the Court in a case precisely like the one at bar, in construing the incontestable clause, used the following language: "By its terms it is not the claim presented by the insured, irrespective of the cause of death, which is made incontestable; it is merely the validity of the policy as an obligation binding upon the company."

The only case that at all militates against our conclusion is *Collins v. Ins. Co.*, 232 Ill.; but that decision seems to be based upon a provision of the State Constitution declaring that no conviction shall work a corruption of blood or forfeiture of estate. It is not necessary that we should discuss that case except to say that we do not regard it as a precedent to be followed. Those cases which are based upon statutes of descent and dower and the like, such as the *Owens case,* 100 N. C., 240, have no application where the liability grows out of contract of insurance.

Upon the agreed statement of facts, the judgment of the Superior Court is reversed. Let judgment be entered in the court below in favor of the plaintiff against the defendant for the sum of $11.40, the sum tendered by the defendant and refused by the plaintiff. All the costs of this Court and the Superior Court will be taxed against the plaintiff.

Reversed.