ELIZABETH SMITH, as Executrix, etc., of KEY PENDLETON SMITH, Deceased, Appellant, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Respondent.

Supreme Court, Appellate Term, Second Department, October 1, 1925.

Insurance — life insurance — policy on life of husband payable to wife — policy contained provision that in case of death of wife before husband, amount of policy should be payable to husband's estate — husband murdered wife and was convicted and electrocuted for crime — husband's estate not entitled to collect on policy — no forfeiture.

A life insurance company will not be required to pay the face of a life policy issued on the life of a husband and payable to his wife as beneficiary, which contains also a provision that in case the wife shall predecease the husband the policy shall be payable to the estate of the husband, where it appears that while the policy was in force the husband murdered his wife and was subsequently convicted and electrocuted for that crime. Such a holding does not work a forfeiture.

APPEAL by the plaintiff from a judgment of the Municipal Court of the City of New York, Borough of Brooklyn, First District, dismissing the complaint.

*Benjamin Cohn,* for the appellant.

*Edward M. Grout* and *Paul Grout* [*Charles V. Lavoe* of counsel], for the respondent.

CROPSEY, J.:

The action is to recover upon a policy of life insurance. No evidence was taken. The facts were all stipulated in the court below. Those that may be important are the following: About

April 21, 1922, the defendant issued a policy in the sum of $1,000 upon the life of plaintiff's testator. The policy was payable to Marie Rose Smith, the wife of the insured. All premiums were paid. The policy provided that if the beneficiary died before the insured the interest of the beneficiary should vest in the insured. About May 4, 1922, the insured murdered the beneficiary. For that crime he was convicted and executed about June 28, 1923. Thereafter the will of the insured was duly probated, letters testamentary were issued to the plaintiff, proper proof of death was given to defendant, and demand for payment made and refused. In appellant's brief it is stated that by the terms of the policy the right of the insured to change the beneficiary was reserved to him. The policy is not before us and there is no such concession in the stipulated facts, although respondent's brief does not dispute the accuracy of that statement.

The question presented is: Where the insured murders the beneficiary, and because of his crime is convicted and electrocuted, may his estate recover upon a policy which provides that the interest of the beneficiary shall vest in the insured upon the death of the former?

No case in this State directly in point has been brought to our attention. The question has been decided, however, in other jurisdictions. We think the plaintiff is not entitled to recover. By killing the beneficiary the insured made the policy and its proceeds payable to himself and his estate. If recovery may be had he would thereby enrich his estate upon his death. The principle enunciated in *Riggs* v. *Palmer* (115 N. Y. 506) seems to be applicable. There the person who was a legatee under the will of another killed that other, and the court held that the person committing the crime could not share in the deceased's estate although otherwise he would have taken under the will. It was the act of the criminal that created his claim. In the case at bar, without a change of beneficiary, neither the insured nor his estate would have benefited upon his death. The criminal act of the insured made the policy payable to himself and his estate. The situation would be no different if the facts showed that the beneficiary could have been changed by the insured without the former's consent. Even though the insured had had that right, he did not exercise it, and the policy became payable to himself and his estate solely by virtue of his wrongful act in murdering the beneficiary.

Had the beneficiary murdered the insured, she could not have recovered upon the policy. This seems to be the prevailing rule, even where there is no provision in the policy bearing on the

subject. (*Cleaver* v. *Mutual Reserve Fund Life Assn.*, L. R. [1892] 1 Q. B. Div. 147; *N. Y. Mutual Life Ins. Co.* v. *Armstrong*, 117 U. S. 591, 600; *Slocum* v. *Metropolitan Life Ins. Co.*, 245 Mass. 565; *Knights of Honor* v. *Menkhausen*, 209 Ill. 277; *Schmidt* v. *Northern Life Assn.*, 112 Ia. 41, 43, 44.) In some of those cases it was held that although the beneficiary could not recover, the family or estate of the insured could recover. They also point out what seems to be a manifestly proper rule, that if the beneficiary may not recover, no one claiming under him may do so. The cases holding that a beneficiary who has murdered the insured may not recover are based upon a rule of public policy and not upon any provision of the insurance policy. In some of them it is stated that if the policy on its face provided for its payment in the event of the insured being murdered by the beneficiary, it would not be enforcible by the beneficiary if the latter killed the insured, as such a contract would be against public policy, and that in the absence of such a provision the same result must be reached, as it would be illogical to say that recovery could be had by a beneficiary who murdered the insured, in the absence of a provision in the policy to that effect, when such recovery could not be had if the policy expressly so provided.

There is a further reason why we think plaintiff may not recover. It is that the insured lost his life by operation of law, as punishment for the crime of murder which he committed. In a legal sense the situation is quite the same as it is when the insured commits suicide. The legal difference, so far as the question under consideration goes, is merely in the agency that produces death. In the case of a suicide, the agency is his own hand. In the case of one who is killed by operation of law, as punishment for a crime that he has committed, the agency is the arm of the law, but death is really brought about by the act of the insured in committing the crime.

There is a conflict of authority as to whether an insurer is liable where death is brought about by suicide, the insured being sane, and there being no clause in the policy relating to it. Where an insane person commits suicide there seems to be no reason for relieving the insurer.

Some cases outside of this State hold that the suicide of the insured relieves the insurer from liability where the policy is payable to the insured or his personal representatives. (*Supreme Lodge, Knights of Pythias* v. *Kutscher*, 72 Ill. App. 462, 474.) The reasons given are that it would be a wrong to permit the insured's estate to profit by his act and that such a death was not included in or contemplated by the policy. Other cases hold that suicide

does not relieve the insurer, where the policy is payable to a third person. (*Parker* v. *Des Moines Life Assn.*, 108 Ia. 117, 123; *Seiler* v. *Economic Life Assn.*, 105 id. 87, 92, 96; *Supreme Council of Royal Arcanum* v. *Pels*, 110 Ill. App. 409, 410; *Supreme Conclave, Improved Order of Heptasophs* v. *Miles*, 92 Md. 613, 626–629; *Morris* v. *State Mutual Life Assurance Co.*, 183 Penn. St. 563, 572, 573; *Patterson* v. *Natural Premium Mutual Life Ins. Co.*, 100 Wis. 118.) In some of the cases just cited, the beneficiary had a vested interest in the policy, and in others, that was not the fact.

Still other cases outside of this State hold that suicide is not covered by the policy and hence there can be no recovery where death is thus caused, whether the policy be payable to the insured's estate or a third person. (*Hopkins* v. *Northwestern Life Assurance Co.*, 94 Fed. 729; affd., but on other grounds, 99 id. 199.) The *Hopkins* case in the lower court was based upon the decision of the United States Supreme Court in *Ritter* v. *Mutual Life Ins. Co.* (169 U. S. 139), in which Mr. Justice HARLAN, writing for the court, stated, in general language, that suicide was not covered by the policy. The policy in that case in fact was payable to the insured and his estate, but this was not stressed, nor does the opinion seem to have turned upon it.

Other courts hold that the suicide of the insured does not relieve the insurer, no matter who the beneficiary may be, that is, even though it be the insured himself. (*Campbell* v. *Supreme Conclave, Heptasophs*, 66 N. J. Law, 274.) The opinion in that case states that the estate of the insured did not take the latter's life and, therefore, it could recover; that the conclusion reached in the opinion of Mr. Justice HARLAN in the *Ritter* case " is a plain *non sequitur*." The opinion in the *Campbell* case, however, recognizes the rule that a beneficiary who murders the insured cannot recover. (Citing *N. Y. Mutual Life Ins. Co.* v. *Armstrong*, 117 U. S. 591.) For other cases on this general subject further showing the divergence in views, see note, 8 L. R. A. (N. S.) 1124.

While there is this difference of opinion in other States, the law upon this question in New York seems to be well settled. Here, unless the policy is payable to a beneficiary who has a vested right in it, the insurer is not liable, where the insured takes his own life, although the policy contains no such provision. If, however, the policy is payable to a beneficiary who has a vested right in it, then the suicide of the insured is no defense to an action by the beneficiary. (*Shipman* v. *Protected Home Circle*, 174 N. Y. 398; *Patrick* v. *Excelsior Life Ins. Co.*, 67 Barb. 202; *Fitch* v. *American Popular Life Ins. Co.*, 59 N. Y. 557.) The fact that the policy

43

is payable to a third party is not the determining one in this State. The question is, has such beneficiary a vested right in it.

Consideration of the cases dealing with the question of the insured coming to his death at the hands of justice leads to the same result as where he commits suicide. In an early case in England, commonly referred to as the *Fauntleroy* case, the rule is laid down that where the insured's life was taken pursuant to process of law, as a punishment for crime, there could be no recovery on the policy. (*Amicable Society* v. *Bolland*, 4 Bligh [N. S.], 194; S. C. 2 Dow. & Clark, 1.) In that case the policy was payable to the insured or his assigns. It was later assigned, but not for value, and still later, the insured was adjudged a bankrupt. It was also shown that the insured had committed forgery, for which he had been convicted and executed. The lord chancellor held that the parties representing the insured and claiming under him could not recover on the policy.

The same result was reached in *Supreme Commandery, Knights of Golden Rule* v. *Ainsworth* (71 Ala. 436, 447), though in that case the policy was payable to a third person as beneficiary, but that fact was not commented upon. The same court, though composed of different judges, later passed upon a question somewhat similar. In the later case the insured had committed suicide, and the policy was payable to his estate. It contained a further provision that it should be incontestable, except for non-payment of premiums, after the lapse of two years from its issue. The court first held that notwithstanding this clause the action would not lie. Later, upon a rehearing, the court split, the majority holding that because of that clause, the fact that the insured committed suicide did not bar recovery. (*Mutual Life Ins. Co.* v. *Lovejoy*, 201 Ala. 337.) The court did not overrule the decision in the *Ainsworth* case, stating that no such clause was involved there.

There are other cases holding that recovery cannot be had where the insured lost his life at the hands of justice. Such was the decision where the policy was payable to the legal representatives or the estate of the insured (*Collins* v. *Metropolitan Life Ins. Co.*, 27 Penn. Super. Ct. 353; *Kilpatrick* v. *Metropolitan Life Ins. Co.*, [Penn.] 13 Ins. L. J. [N. S.] 576); also where it was payable to a third party with the right in the insured to change the beneficiary. (*Scarborough* v. *American National Ins. Co.*, 171 N. C. 353.) The Supreme Court of the United States has passed on this question. In *Burt* v. *Union Central Life Ins. Co.* (187 U. S. 362) the policy was payable to the wife of the insured, if living; otherwise, to the insured's executors, administrators or assigns. Prior to the death of the insured, the beneficiary and the insured assigned a half

interest in the policy to the plaintiffs, to secure them as creditors of the assignors, and later the beneficiary died intestate, as did also the only children of the beneficiary and of the insured.   Thereafter the insured assigned to the plaintiffs the remainder in the policy, making them the sole owners of it.   They were also his sole heirs.   The insured was indicted and convicted of the murder of his wife, the beneficiary, and was hanged, pursuant to the sentence.   The court held, following the *Fauntleroy* case in England, that the insurance company was not liable.   This case was followed in *Northwestern Life Ins. Co.* v. *McCue* (223 U. S. 234).

There are decisions, however, to the contrary of those already mentioned.   The Supreme Court of Illinois has held, in a case in which the policy was payable to the estate of the insured, that his death at the hands of justice did not relieve the company from liability, and that his estate could recover upon the policy.   (*Collins* v. *Metropolitan Life Ins. Co.*, 232 Ill. 37.)   The opinion in that case refers to *Riggs* v. *Palmer* (115 N. Y. 506), and says, it " has not generally been regarded as sound by the other courts." Referring to the *Fauntleroy* case, the opinion points out that forfeitures for the commission of crime were enforced in England at the time of that decision, and adds that it was based upon the ground of public policy, but that it is no evidence that the same public policy prevails in this country.   Apparently because of the provision in the Constitution of the State of Illinois, that no conviction should work a forfeiture of estate, that court held the insurance company was liable, and that to hold otherwise would be to forfeit the property rights which the deceased and his estate had in the policy.   It is not readily understood, however, how the court reached this conclusion, because, in the opinion, reference is made to another case in the same court, which it recognized as being sound, in which it was held that a beneficiary who had murdered the insured could not recover.   (*Knights of Honor* v. *Menkhausen*, 209 Ill. 277.)   It would seem that the beneficiary in the latter case had as great rights as the insured had in the *Collins* case, and, if they could not be taken away in one, they should not have been taken away in the other.   If a refusal to permit recovery would work a forfeiture, as the *Collins* opinion held, then equally must the decision in the *Menkhausen* case have produced that result.   It can make no difference who the beneficiary is, if the decision is to turn on the question of forfeiture.

The *Collins* case, however, has been followed in several other jurisdictions.   In Tennessee, under a similar constitutional provision, the court held there could be recovery on the policy; that the situation was the same as if the assured had committed suicide.

Appellate Term, Second Department, October, 1925.     [Vol. 125

(*Fields* v. *Metropolitan Life Ins. Co.*, 147 Tenn. 464.) Under a similar constitutional provision, the same result was reached in Texas. (*American National Ins. Co.* v. *Coates*, 112 Tex. 267.)

Reference has already been made to a case in Alabama (201 Ala. 337) which held that, where the policy contained an incontestable clause, after the time fixed by it had expired, recovery could be had, even though death was brought about by suicide. There are other decisions to the same effect. (*Supreme Lodge, Knights of Pythias* v. *Overton*, 203 Ala. 193; *Sun Life Ins. Co.* v. *Taylor*, 108 Ky. 408.)

Some of the cases previously cited, on another branch of the discussion, contain incontestable clauses, in which the holding last referred to with respect to them was not followed. These cases rule that, notwithstanding the incontestable clause and the fact that the period mentioned in it has expired, there can be no recovery on the policy where the insured met death at the hands of justice. (*Scarborough* v. *American National Ins. Co.*, 171 N. C. 353; *Collins* v. *Metropolitan Life Ins. Co.*, 27 Penn. Super. Ct. 353.)

In the stipulated facts of the case now being decided, there is nothing which shows that there is any incontestable clause in the policy. We must, therefore, assume there was not. The question of forfeiture, however, remains because that arises independent of any clause. It may be considered with the general question of public policy. There is a practical unanimity of opinion that a beneficiary who murders the insured may not recover. This holding is not based upon any provision of the policy, but is merely one of public policy. The act of such a beneficiary accelerates the maturity of the policy. To permit recovery under such circumstances would be to encourage one to profit by his own wrong. No question of forfeiture seems to have been considered in those cases.

Much the same argument may be, and in fact has been made in the case of an insured committing suicide or meeting death at the hands of justice. In either of those events he hastens the maturity of the policy, and if it is payable to his estate he would unjustly enrich it if recovery were allowed. We think the same result should follow as where the beneficiary murders the insured, except when the beneficiary has a vested right in the policy, in which event neither the suicide of the insured nor his death at the hands of justice should defeat a recovery. In the *Burt Case* (*supra*, 187 U. S. 362) the fact is noted that the plaintiffs claimed directly under the insured. Mr. Justice BREWER, writing for the court, said (pp. 365, 366): " It cannot be that one of the risks covered by a contract of insurance is the crime of the insured. There is

an implied obligation on his part to do nothing to wrongfully accelerate the maturity of the policy. Public policy forbids the insertion in a contract of a condition which would tend to induce crime, and as it forbids the introduction of such a stipulation it also forbids the enforcement of a contract under circumstances which cannot be lawfully stipulated for."

The main reason given in the cases that hold that neither the suicide of the insured nor his death at the hands of justice should defeat recovery is that otherwise there would be a forfeiture. We do not find ourselves in accord with that view. We think no forfeiture results even though recovery be denied. The question was considered by our Court of Appeals in the *Riggs Case* (*supra*, 115 N. Y. 506). There it was held that the act of one, who was a legatee under a will, in killing the testator, deprived him of his right to his legacy. Apparently there is no provision in the Constitution of the State of New York regarding forfeitures. There is, however, this provision in section 512 of the Penal Law: " A conviction of a person for any crime does not work a forfeiture of any property, real or personal, or of any right or interest therein * * *." There is also the provision in section 2301 of the Penal Law, that " no forfeiture is imposed " for suicide. Notwithstanding the provisions of section 512 (then found in section 710 of the Penal Code), recovery was refused. The opinion therein states (p. 514) that in fact there was no forfeiture. The party committing the crime had no absolute right to take under the law, that is, no right in the property, but only the right to take in the event that the testator died without changing his will or revoking it. By his wrongful act in killing the testator, the plaintiff had benefited himself by bringing into existence a right or interest in property which had not theretofore existed and which never might have come into existence had he not committed the crime. Under the circumstances the court held that the plaintiff could not enforce that right.

A similar situation seems to exist where an insured person either takes his own life or meets his death at the hands of justice and the insurance is payable either to himself or his estate or a third party who has no vested right to it. In such a case prior to the death of the insured, there is no one who has an absolute right to the proceeds of the policy. The right to recover is conditioned by a sound public policy upon the insured's not deliberately doing something which will make the policy mature. Therefore, the act of the insured which accelerates its maturity, and thus benefits his estate or the beneficiary, should prevent recovery. Such holding does not work a forfeiture. It takes away no fixed right

possessed by any one, but merely prevents those who represent the insured or take through him from getting a benefit from his wrongful act. While this question of forfeiture was not discussed in the *Shipman Case* (*supra*, 174 N. Y. 398), it was necessarily involved, so the holding in the *Collins* case in Illinois, and the other cases mentioned, is not the law of this State.

Our conclusion is that, whether the insured commits suicide, while sane, or loses his life at the hands of justice, neither his estate nor a beneficiary having no vested interest may recover on the policy. The rule is otherwise· if the policy be payable to a beneficiary who has a vested interest.

Judgment affirmed, with ten dollars costs.

Lazansky and MacCrate, JJ., concur.