## PRUDENTIAL INS. CO. OF AMERICA v. GOLDSTEIN.

### Civ. No. 2310.

District Court, E. D. New York.

Feb. 5, 1942.

Weit & Goldman, of New York City (Solon Weit and Merwin F. Levine, both of New York City, of counsel), for plaintiff.

Jay Leo Rothschild, of New York City (Jay Leo Rothschild and Walter S. Beck, both of New York City, of counsel), for defendant.

MOSCOWITZ, District Judge.

This is an action for a declaratory judgment to determine the obligations of the insurer on a policy of life insurance written by it. There is no dispute as to the facts and the parties have stipulated that the issues be resolved on motions for summary judgment. Although the beneficiary, the defendant herein, originally resisted the use of an action for declaratory judgment, no objection is now raised. In any event there can be no doubt as to its propriety in the present circumstances.

The question sought to be resolved in this action for declaratory judgment

·is whether public policy prevents recovery on the policy of one whose life has been legally taken by the state for violation of its laws. Needless to say, this contract of insurance having all its contacts within the State of New York, it is to the public policy of that state that we must turn for a determination of the issue.

The policy in question was issued by the plaintiff on or about February 3, 1936, the beneficiary being the insured's wife. The insured, familiarly known to the public as "Bugsy" Goldstein, died by electrocution on June 12, 1941 at the hands of the state for commttting the crime of murder. It is perhaps ironical that the insured's application for insurance should have described him as an electrician.

In urging that public policy of the state prevents recovery on this policy, the insurer points to what it describes as a consistent line of cases beginning with Riggs v. Palmer, 115 N.Y. 506, 22 N.E. 188, 5 L.R.A. 340, 12 Am.St.Rep. 819, all pointing in the direction of no recovery. Riggs v. Palmer, it will be recalled, was a case in which the beneficiary murdered the insured and recovery was denied, the court pointing out that not only would recovery in such a situation tend to promote crime, but it would also violate the well-established canon of equity that one should not profit by his own wrong.

From Riggs v. Palmer, supra, the parties have, in very elaborate briefs, attempted to trace the development of the New York rule of public policy in cases of this type. Since the pronouncements of the New York Court of Appeals stop short of the point at issue, it becomes necessary to examine the determination of some of the lesser New York courts. The insurer points to Smith v. Metropolitan Life Ins. Co., 125 Misc. 670, 211 N.Y.S. 755 and Jacob v. Prudential Ins. Co. of America, 256 App. Div. 884, 9 N.Y.S.2d 27. In the former case the insured murdered his wife who was the beneficiary of the policy on his life, and was thereafter executed for murder. The court, in the absence of an incontestability clause, held that there was an implied obligation on the part of the insured to do nothing wrongfully to accelerate the maturity of the policy, and denied recovery. In the Jacob case where the insured died during her submission to an illegal abortion operation, recovery was denied on that portion of the policy granting double indemnity for death occurring through accidental means. Apparently no question was raised with respect to payment of the single benefits.

On the other hand, the defendant contends that the statute law of the State of New York unmistakeably establishes that there is nothing in the public policy of the State to prevent recovery. The comprehensive revision of the New York Insurance Law in 1939, included in Section 155(2) thereof a clause which forbade any provision in a policy of life insurance excluding liability for death caused in a certain specified manner unless it was one of those covered in the section. These did not include death by legal execution. While Section 155(2) standing by itself would probably be inconclusive on the absence or existence of a public policy one way or the other, defendant's statutory argument is not wholly without weight when read in the light of Section 164 dealing with accident and health insurance policies. That Section expressly permits the inclusion of an optional clause exempting the insurer from liability "for death, injury incurred or disease contracted, to which a contributing cause was the insured's commission of, or attempt to commit, a felony, or which occurs while the insured is engaged in an illegal occupation." Subdivision 4(f).

█ If the statute permits the optional inclusion of such a clause, by the same token it must carry with it the implication that its absence means that recovery can be had for death, injury or disease arising from commission of a crime, and that such recovery would not be against public policy. Moreover, where in the case of a comprehensive revision of a law, authority is given for the optional inclusion of an exception in one instance, Section 164, but is not given in another instance, Section 155(2), it is a reasonable conclusion that in the second instance there should be not implied an intention to permit the exception. It would follow therefore that not only is there no policy opposed to recovery for death by legal execution, but that in absence of proof of an element of fraud within the period that the policy might be contested, death by legal execution cannot be excepted.

While, as pointed out in Udiskey v. Metropolitan Life Ins. Co., Sup. Ct. Westchester Co., 177 Misc. 960, 32 N.Y.S.2d

579, the foregoing statutes may not be retroactively applicable to the present policy, they do evidence in part what the public policy of the State may be, and in absence of strong authority in opposition, weigh heavily in favor of permitting recovery. The Udiskey case, moreover, answers plaintiff's argument that a clause expressly insuring against death by execution would be enforceable since such a policy would carry the natural inference that it was secured in anticipation of committing a crime.

A discussion of this problem would not be complete without reference to the very well reasoned case of Weeks v. New York Life Ins. Co., 128 S.C. 223, 122 S.E. 586, 35 A.L.R. 1482, wherein the public policy issues involved in a case such as the present one were very carefully weighed and the authorities on both sides of the question carefully considered and the issue resolved in favor of recovery by the beneficiary. In final analysis, the granting of recovery in a case like the present one in no way benefits the criminal who is now dead and at least benefits his named beneficiaries who in most instances will be the persons deprived of support and maintenance by his death. On the other side of the ledger is the purely speculative possibility that a man who knows his kin are cared for by his insurance is more apt to commit a crime punishable by death. In reply to such an assumption, it may well be asked what sort of crime deterrent the voiding of a man's life insurance may be, when the penalty of death does not halt his criminal act.

It is significant that the insurer has not been able to cite one case in New York State squarely in point. Why has not the question been raised heretofore in New York State? Is it due to the fact that there is a general acquiescence on the part of insurance companies as to what constitutes the public policy?

While it cannot have any binding effect, it is persuasive upon the question of public policy that in the case of a number of notorious murderers the many insurance companies involved have raised no defenses claiming the policies issued upon the lives of the murderers were invalid. The public policy for which the insurer now contends could not, therefore, be such a potent one.

Judgment for the defendant.

Settle order on notice.