## JOHN HANCOCK MUTUAL LIFE IN-SURANCE COMPANY, Appellant,

### v.

### Clyda TARRENCE, Appellee.

### No. 12940.

United States Court of Appeals
Sixth Circuit.

May 15, 1957.

Martin, Circuit Judge, dissented.
See also D.C., 126 F.Supp. 752.

Thomas W. Bullitt, Louisville, Ky. (Wm. Marshall Bullitt, M. Brooks Senn (of Bullitt, Dawson & Tarrant), Louisville, Ky., on the brief), for appellant.

Sandy Paniello, Louisville, Ky., for appellee.

Before SIMONS, Chief Judge, and MARTIN and STEWART, Circuit Judges.

STEWART, Circuit Judge.

In this case a Kentucky district judge was called upon to resolve a narrow and elusive question of New York law. His decision is now reviewed by a court composed of judges from Michigan, Tennessee and Ohio. Such an anomaly, though not unfamiliar, is never fortunate.

The facts are not in dispute. The appellee was the beneficiary of life insurance policies aggregating $9,300, issued by the appellant company on the life of her husband, Roy Tarrence. The policies had been issued pursuant to a prior group policy, which provided that they should "be deemed to be issued and delivered in the State of New York and shall be construed according to the law thereof." In 1953 Roy Tarrence was convicted of murder and sentenced to death. He was executed by electrocution in the state penitentiary at Eddyville, Kentucky, in 1955. The insurance policies contained two-year incontestability clauses, and it is undisputed that the

period of contestability had elapsed prior to Tarrence's death.

The appellant refused payment under the policies, and the appellee sued to recover in a Kentucky state court. The cause was removed by the appellant to the District Court for the Western District of Kentucky. There both parties filed motions for summary judgment. They were in agreement, as the district judge stated, "that the case presents the sole and single question of whether under the law of New York death by lawful execution for crime committed avoids liability for death benefits under a policy of life insurance as being against public policy." [139 F.Supp. 770.] The court granted judgment for the appellee, relying upon a 1942 decision of the District Court for the Eastern District of New York, Prudential Ins. Co. of America v. Goldstein, 43 F.Supp. 765.

The facts in the Goldstein case were substantially the same as those presented here. In that case, as in this, the insurance policy contained a clause making it incontestable at the time of the death of the insured. There as here the victim of the murder for which the insured had been executed was a stranger to the insurance contract. Finding nothing in the law or public policy of New York which would prevent recovery under these circumstances, the court in the Goldstein case decided in favor of the insurance beneficiary.

Counsel for the appellant, in elaborate briefs and extensive and able oral argument, vigorously maintains that the Goldstein case does not express the law of New York upon the question in issue. The true rule, according to the appellant, is to be found in an earlier decision of an intermediate appellate court of New York, Smith v. Metropolitan Life Ins. Co., 2d Dept. 1925, 125 Misc. 670, 211 N.Y.S. 755, "the only New York case on the question," denying recovery where the insured died by lawful execution. It is strenuously argued that in deciding the Goldstein case the District Court for the Eastern District of New York failed to follow the law of New York

expressed in the Smith case, although its duty to follow a decision of an intermediate state appellate court in a diversity case, the highest court of the state not having spoken on the question, was absolute. West v. American Tel. & Tel. Co., 1940, 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139. Therefore, the appellant argues, to discover the law of New York, the district court in the present case should have disregarded Goldstein and looked instead to Smith.

■ The appellant's basic premise is, of course, entirely sound. There can no longer be any question of the unqualified obligation of a district court in a diversity case to follow the law expressed by an intermediate state appellate court, if the state's highest court has not declared it, and to do so even if the federal court may think the law as so expressed is unsound in principle. West v. American Tel. & Tel. Co., supra; Six Companies v. Joint Highway Dist., 1940, 311 U.S. 180, 61 S.Ct. 186, 85 L.Ed. 114; Fidelity Union Trust Co. v. Field, 1940, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109.

■ We cannot agree, however, that in deciding Prudential Ins. Co. of America v. Goldstein, the district judge disregarded this obligation. The Supreme Court's decisions in West v. American Tel. & Tel. Co., supra, Six Companies v. Joint Highway Dist., supra, and Fidelity Union Trust Co. v. Field, supra, had been announced more than a year before Judge Moscowitz was called upon to decide the Goldstein case, and there is no reason to suppose that he was unmindful of their teaching. In reaching his decision in the Goldstein case, Judge Moscowitz gave explicit consideration to Smith v. Metropolitan Life Ins. Co. and concluded that it was inapplicable upon the facts, D.C., 43 F.Supp. 766-767.

The Smith case did involve facts substantially different from those presented in the Goldstein case and the case at bar. In Smith the insured had been executed for murdering the beneficiary. Upon the death of the beneficiary the proceeds of the policy became payable to the insured's estate. To permit an

insured to enrich his estate by murdering the beneficiary named in the policy was declared to be contrary to the public policy of New York. It is also noteworthy that in deciding the Smith case the New York appellate court assumed that the insurance policy there in question did not contain an incontestable clause. 125 Misc. 676, 211 N.Y.S. 761. By contrast the policies in the present case contained clauses providing: "This policy, except any supplementary provision hereof granting any additional insurance specifically against death * * * by accidental means, shall be incontestable after it has been in force during the lifetime of the insured for two years from its effective date of issue, except for non-payment of premium." While the Smith opinion discusses cases from other jurisdictions expressing conflicting views upon the issue of whether an incontestable clause permits recovery where the insured meets death by suicide or lawful execution after the period of contestability has elapsed, the court in the Smith case was not faced with this issue and did not rule upon it.

Moreover, it is clear that the decision in the Smith case is not, as the appellant argues, premised upon the theory that death by lawful execution is a risk which the insurer never assumes in New York as a matter of law. Although recovery by the insured's estate was denied, the court declared that "the rule is otherwise if the policy be payable to a beneficiary who has a vested interest." 125 Misc. 678, 211 N.Y.S. 763. That statement is inconsistent with the view that the risk was not one assumed under the policy as a matter of law. Compare Scarborough v. American Nat. Ins. Co., 1916, 171 N.C. 353, 88 S.E. 482, L.R.A.1918A, 896, and Collins v Metropolitan Life Ins. Co., 1905, 27 Pa.Super. 353.

The Goldstein case is thus the only decision directly in point upon the precise question of New York law here in issue. It was decided by a court "in effect, only another court of the State," Guaranty Trust Co. of N. Y. v. York, 1945, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079, by a federal judge versed in the law of that state. The district court in the present case correctly followed that decision. MacGregor v. State Mut. Life Assurance Co., 1942, 315 U.S. 280, 62 S.Ct. 607, 86 L.Ed. 846. See Steele v. General Mills, 1947, 329 U.S. 433, 439, 67 S.Ct. 433, 91 L.Ed. 402; Hillsborough Tp., Somerset County v. Cromwell, 1946, 326 U.S. 620, 630, 66 S.Ct. 445, 90 L.Ed. 358.

The authority of the Goldstein case was not impaired by the later decision of the Appellate Division in Udisky v. Metropolitan Life Ins. Co., 2d Dept. 1942, 264 App.Div. 890, 35 N.Y.S.2d 1021, reversing Udisky v. Metropolitan Life Ins. Co., 1941, 177 Misc. 960, 32 N.Y.S.2d 579, cited in the Goldstein opinion. The question in Udisky was whether there could be recovery of *double indemnity* for accidental death of an insured who died while in the commission of a felony. The insurer had paid single benefits under the policy without dispute. See Udisky v. Metropolitan Life Ins. Co., Sup., 1945, 54 N.Y.S.2d 732 (Referee's opinion upon remand). The Appellate Division simply held that New York public policy as expressed in Jacob v. Prudential Ins. Co. of America, 4th Dept., 256 App.Div. 884, 9 N.Y.S.2d 27, affirmed 1939, 281 N.Y. 623, 22 N.E.2d 177 (disallowing recovery of double indemnity where the insured had died while submitting to an illegal operation) had not been changed by the New York Legislature[1]

It follows that the district court correctly discerned and correctly applied the law and public policy of New York.[2]

The judgment is affirmed.

---

1. New York Insurance Code, McK.Consol. Laws, c. 28, § 155(1) (b), while making mandatory a two-year incontestable clause in life insurance policies, does not require that such a clause be applicable to double indemnity provisions.

2. Although the question was not discussed in the district court, it appears that the conclusion reached is in accord with the public policy of the forum. Sun Life Ins. Co. v. Taylor, 1900, 108 Ky. 408, 56 S.W. 668.

MARTIN, Circuit Judge (dissenting).

The opinion of the New York intermediate appellate court in Smith v. Metropolitan Life Ins. Co., 125 Misc. 670, 211 N.Y.S. 755, 757 (decided October 1, 1925), in my judgment controls decision in the instant case. There the court stated that the question presented was whether the estate of a man convicted of and electrocuted for murdering his wife, who was beneficiary of a policy of insurance on his life, could recover upon a policy which contained a provision that the interest of the beneficiary should vest in the insured upon her death. The court answered that question in the negative, stating that the rule would be otherwise were the policy payable to a beneficiary having a vested interest. The opinion asserted that, by killing the beneficiary, the insured made the policy and its proceeds payable to himself and his estate. It was reasoned that in a legal sense, where the insured lost his life by operation of law as punishment for the crime of murder committed by him, the "situation is quite the same as it is when the insured commits suicide": that his death is really brought about by his act in committing the crime. The New York court recognized the conflict in authorities and rejected those holding that the death of the insured by lawful execution for a crime does not absolve an insurance company from liability to his estate, citing decisions to that effect from Illinois, Tennessee and Texas. To the contrary, the opinion of the New York court cited with evident approval cases holding that there can be no recovery on an insurance policy where the insured loses his life by lawful execution. Burt v. Union Central Life Ins. Co., 187 U.S. 362, 23 S.Ct. 139, 47 L.Ed. 216; Northwestern Mutual Life Ins. Co. v. McCue, 223 U.S. 234, 32 S.Ct. 220, 56 L.Ed. 419; Scarborough v. American Nat. Ins. Co., 171 N.C. 353, 88 S.E. 482; Collins v. Metropolitan Life Ins. Co., 27 Pa.Super. 353.

Near the end of its opinion, the New York appellate court said: "The right to recover is conditioned by a sound public policy upon the insured's not deliberately doing something which will make the policy mature. Therefore the act of the insured which accelerates its maturity, and thus benefits his estate or the beneficiary, should prevent recovery. Such holding does not work a forfeiture. It takes away no fixed right possessed by anyone, but merely prevents those who represent the insured or take through him from getting a benefit from his wrongful act."

In holding the insurance company liable where the insured was electrocuted for the crime of murder in the Goldstein case, United States District Judge Moscowitz pointed out that, in the Smith case which has just been discussed, there was no incontestability clause in the policy of insurance there involved. But the opinion of the New York appellate court in the Smith case, supra, made the comment that in some of the cases on which the court relied the policies contained incontestability clauses; and that, notwithstanding this and despite the fact that the period of contestability had expired, there could be no recovery on the policies where the insured met his death at the hand of justice. The North Carolina case, supra, and the Pennsylvania case, supra, were cited.

District Judge Moscowitz pointed out that, inasmuch as the New York insurance law excluded liability for death caused in certain specified circumstances, there was no inclusion of death by legal execution and that it was a reasonable deduction that an intention to permit such exception may not be applied. He considered that the opinion in Udisky v. Metropolitan Life Ins. Co., 177 Misc. 960, 32 N.Y.S.2d 579, answered the insurance company's argument that a clause expressly insuring against death by execution would be enforceable, inasmuch as such policy would carry the natural inference that it was secured in anticipation of the insured's committing a crime.

But the decision of the trial court in the Udisky case, which Judge Moscowitz cited, was reversed on appeal. Udisky

v. Metropolitan Life Ins. Co., 204 App. Div. 890, 35 N.Y.S.2d 1021, 1022 (decided June 22, 1942). In its reversing opinion, the Appellate Division said that the provision in the New York insurance law was not to be interpreted as changing public policy "where the insured suffers injury or dies in the course of, or in an attempt to commit a felony"; and that the New York statute was merely declaratory of existing law.

The trial judge in the case at bar considered that Judge Moscowitz had pronounced the New York law in this quoted paragraph [43 F.Supp. 767]: "In final analysis, the granting of recovery in a case like the present one in no way benefits the criminal who is now dead and at least benefits his named beneficiaries who in most instances will be the persons deprived of support and maintenance by his death. On the other side of the ledger is the purely speculative possibility that a man who knows his kin are cared for by his insurance is more apt to commit a crime punishable by death. In reply to such an assumption, it may well be asked what sort of crime deterrent the voiding of a man's life insurance may be, when the penalty of death does not halt his criminal act."

But that paragraph was not an actual analysis of the New York law, but followed the citation of an opinion of the Supreme Court of South Carolina in Weeks v. New York Life Insurance Co., 128 S.C. 223, 122 S.E. 586, wherein the beneficiary had recovered against the insurer upon principles of public policy similar to those involved here.

Moreover, at the very conclusion of his opinion, Judge Moscowitz stressed the fact that, in the cases of a number of notorious murderers, the many insurance companies involved did not defend liability upon the policies issued upon the lives of the murderers.

In Northwestern Mutual Life Ins. Co. v. McCue, 223 U.S. 234, 241, 32 S.Ct. 220, 56 L.Ed. 419, supra, it was argued by the attorney for the McCue children that their father, who had been executed for killing their mother, had insurance policies upon his life other than those issued by the Northwestern; that the other companies had paid off, evincing a general custom in insurance circles to acknowledge that the risk of lawful execution of the insured was actually covered by the policies. The Supreme Court held, nevertheless, that a policy of insurance, silent on the point, does not cover the death of the insured by the hand of the law. Obviously, no weight was attached to the actions of the other insurance companies in admitting liability.

For the foregoing reasons, I think the New York law prevents recovery by the appellee-widow on the insurance policies covering the life of her deceased husband, Roy Tarrence.