SVEN R. CARLSON et al., as Administrators of the Estate of ANNA CARLSON, Deceased, Appellants, v. TRAVELERS INSURANCE COMPANY, Respondent.

Second Department, December 14, 1970.

*Lloyd L. Rosenthal* for appellants.

*Miller, Ouimette & Moran* (*Kenneth J. Burke* of counsel), for respondent.

BENJAMIN, J.  In this action the plaintiffs seek to recover under a group accident and health insurance policy which had covered their intestate, Anna Carlson.  Anna developed septicemia and toxic poisoning after the performance upon her of an illegal abortion and she died intestate on December 3, 1958. The plaintiffs are the administrators of her estate.

The defendant issued the insurance policy on May 15, 1956, insuring the employees of the Western Printing & Lithographing Co., Anna's employer.  By the terms of the policy the defendant agreed to pay such employees for certain hospital and medical expenses incurred on account of accidental bodily injury or bodily sickness or disease in accordance with certain formulas. The premiums on the policy were duly paid.  Anna thereafter became ill from sickness and bodily disease and became a patient in legally constituted hospitals from November 4, 1958 until her death on December 3, 1958.  Damages are sought in the amount of $8,213.02.

The defendant, pursuant to CPLR 3123, served notices upon the plaintiffs to admit the truth of certain facts and the genuineness of certain papers.  Thereby, the plaintiffs were called

upon to admit that certain named persons who were not physicians had performed an illegal abortion on Anna on November 1, 1958, that she was hospitalized as the result of the abortion and that the named persons were subsequently charged and pled guilty to the crimes of conspiracy, manslaughter and abortion. The plaintiffs never responded to the notices.

Prior to the commencement of the action, the defendant offered to pay the plaintiffs a total of $117.50, as it viewed the claim as one arising under the maternity portion of the policy rather than under the bodily sickness or disease provisions, which offer much wider coverage.

The autopsy report concluded: " Subsequent to an abortion septicemia and toxic nephrosis developed which ultimately lead to this patient's death."

Special Term granted the defendant's motion for summary judgment on the ground that public policy bars recovery on a contractual claim arising from an illegal act. It also held that the failure to affirmatively plead the illegality did not bar the assertion of that defense.

The facts set forth in the defendant's notices to admit should be deemed true for the purposes of this appeal. CPLR 3123 provides for the service of a notice to admit. In discussing the applicability of this section to motions for summary judgment, the following has been noted: " CPLR 3212 states as the test for granting a motion for summary judgment that of ' directing judgment,' and requires the motion to be denied if facts are shown ' sufficient to warrant a trial.' For the purpose of ruling on a motion for summary judgment, the court at Special Term is in the same position as a trial court. It should, therefore, consider implied admissions " (3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3123.14). I agree that such admissions should be considered, particularly as the plaintiffs, by their brief, appear to have waived any objection to the consideration of such facts.

I also believe that the defense of illegality may be raised by the defendant despite its failure to affirmatively plead that defense.

Subdivision (b) of CPLR 3018 provides that affirmative defenses such as illegality must be pleaded if they are such as " if not pleaded would be likely to take the adverse party by surprise ". This was not such an issue. The plaintiffs were well aware of the fact that Anna had submitted to an illegal abortion. The failure to affirmatively plead the defense of illegality will not necessarily prevent the assertion of that

defense, particularly if an issue of public policy has been raised (cf. *Dodge* v. *Richmond,* 10 A D 2d 4, 16; 3 Weinstein-Korn-Miller, N. Y. Civ. Prac., pars. 3018.16, 3018.18).

Special Term based its holding of a violation of public policy were the claim to be allowed on *Jacob* v. *Prudential Ins. Co. of Amer.* (256 App. Div. 884, affd. 281 N. Y. 623). In *Jacob* the assured died as the result of a puncture of her uterus during the course of an illegal abortion. In a terse decision the Fourth Department held that abortion was a heinous crime "and that a recovery on the policy is, therefore, against public policy." The value of *Jacob* as authority in the instant case is doubtful, since there the insurer had paid out the ordinary death benefits. The issue in the case was simply whether recovery could be had under the double indemnity provision, which became operative in the event of death by accidental means.

This court had a similar problem in *Udisky* v. *Metropolitan Life Ins. Co.* (264 App. Div. 890), in which the assured had died as the result of an attempted escape from a jail in Connecticut. Again, the dispute involved only an attempt to recover the double indemnity portion of the life insurance policy. We were not called upon to rule on the basis of the illegality involved in the attempt to escape from jail and, instead, held that there would be no liability on the double indemnity provision if the assured's act in jumping from a roof 45 feet above the ground was a deliberate or reckless act and that the resulting injuries were self-inflicted. (See, also, *Piotrowski* v. *Prudential Ins. Co. of America,* 141 Misc. 172.)

In *John Hancock Mut. Life Ins. Co.* v. *Tarrence* (244 F. 2d 86) the Circuit Court of Appeals for the Sixth Circuit was called upon to interpret New York law as to the liability of an insurance company on a life insurance policy in a case in which the assured was electrocuted as the result of his conviction of the crime of murder. In holding that there was no New York public policy against the payment of ordinary death benefits, the court indicated that the *Jacob* and *Udisky* holdings (*supra*) were applicable only to payment of the double indemnity. The court found no reason to believe that public policy barred all payments for deaths which resulted from the commission of a felony.

In *Townsend* v. *Commercial Travelers Mut. Acc. Assn.* (231 N. Y. 148) the assured died as the result of septic poisoning following the use of a hypodermic needle. Possession of such a needle without a license was a crime. The Court of Appeals,

in reversing a nonsuit in an action on a life insurance policy, held that death could have resulted even had the insured lawfully possessed the needle. Hence, death could not be held to have resulted from a criminal act.

Similarly, in this case, a disease could have resulted even had the abortion been a legal one performed to save the life of the mother. There is no attempt to recover for the cost of the illegal abortion, but for a covered illness which could have resulted from the performance of a legal abortion.

In any event, provisions of the Insurance Law enacted after the decisions in the *Jacob* and *Udisky* cases (*supra*) demonstrate that there is no public policy against payment of benefits in a case such as this. Section 162 of the Insurance Law deals with group accident and health insurance policies. Subdivision 3 of that section provides that any portion of such a policy which purports to reduce any benefits payable thereunder by reason of the circumstances under which the loss was incurred must be printed in the policy and in each certificate issued thereunder in bold face type. It then provides that, if any such policy contains a provision limiting liability on a ground stated in either paragraph (10) or (11) of clause (B) of subdivision 3 of section 164 of the Insurance Law, such provision must appear in both the policy and certificate in the statutory language of such paragraphs. The said paragraph (10) provides: "ILLEGAL OCCUPATION: The insurer shall not be liable for any loss to which a contributing cause was the insured's commission of or attempt to commit a felony or to which a contributing cause was the insured's being engaged in an illegal occupation."

The public policy of the State, therefore, as enunciated in the Insurance Law, is that an insurer cannot, in a group health or accident policy, limit his liability for loss caused by the insured's commission of a felony unless the policy specifically so states. Since the policy in the instant case did not contain such a provision, the insurer is liable although public policy would certainly have barred payment for the illegal abortion itself as opposed to the loss incurred by reason of such illegal operation.

The defendant could have inserted a provision limiting its liability for loss resulting from the commission of a felony by inserting a provision to that effect in the policy and in certificates issued thereunder. It chose not to do so. I do not believe that public policy would be served by denying coverage to the insured in a case such as this.

Accordingly, the order and the judgment should be reversed, with one bill of $10 costs and disbursements, and the defendant's motion denied.

Christ, P. J., Rabin, Hopkins and Munder, JJ., concur.

Order and judgment reversed, with one bill of $10 costs and disbursements, and defendant's motion denied.